[L. A. No. 929.   Department Two.—March 27, 1902.]

MARY A. P. SMITH et al., Respondents, v. CITY OF LOS ANGELES et al., Appellants.

MUNICIPAL CORPORATIONS—EXCAVATION IN STREET—DAMAGES.—A municipal corporation is liable for damages caused to the land adjoining a street from an unlawful excavation made in the street at its instance and under its authorization. The evidence in this case is sufficient to warrant a finding that the excavation was authorized by the municipality.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

Walter F. Haas, for Appellants.

J. S. Chapman, and Ward Chapman, for Respondents.

McFARLAND, J.—This action was brought to recover four thousand dollars' damages for injuries to plaintiffs' land caused by an excavation made in the street adjoining the land. The court below, sitting without a jury, found the damages to be seven hundred and fifty dollars, and rendered judgment for plaintiffs in that amount. Defendants appeal from the judgment and from an order denying their motion for a new trial.

It is conceded that the excavation in question damaged the land and constituted a legal injury to the respondents; and we are satisfied that the amount of damages found by the court was fully warranted by the evidence. But it is contended by appellants that the city was not so connected with the acts complained of as to make it legally liable for the damage.

Sand Street in the city of Los Angeles crosses the street called Broadway; and respondents' lot of land in question is on the northwest corner of the intersection of said streets. Before the occurrences involved here the two streets had been graded to the official grade, and the grade of Sand Street was about forty feet lower than that of Broadway, so that on the north side of the former street where it crosses the latter there was a bank nearly perpendicular of about forty feet in depth. In May, 1895, certain persons, against the objection and protest of respondents, excavated and removed a portion of Broadway from the north line of Sand Street. This excavation extended below the official grade of Broadway, along the east line of respondents' lot about twenty feet, and was about forty feet deep. It thus left an almost perpendicular bank nearly forty feet in depth from the level of the surface of respondents' lot on Broadway to the bottom of the excavation, and thus caused the damage complained of. Immediately after the excavation was completed a stairway was made along it, by the express direction of the city council, in order to allow people to pass up over it from the lower grade of Sand Street to the upper grade of Broadway.

The court found that "the defendants, the city of Los Angeles, and Perry A. Howard, superintendent of streets of said city," did this excavation above described; and "that the said work was done and the said excavation made without the consent of the plaintiffs, or either of them, and against their will, by the said street superintendent, *under the authority*

and with the consent and *at the instance* of the said city of Los Angeles, and the said city paid the cost of said excavation." If these findings are warranted by the evidence, they support the judgment, and make it unnecessary to consider much of the elaborate discussion of counsel about the liability of municipalities for damages for injuries to persons or property caused by acts of independent corporate officers, and not by acts of the corporation itself. It has never been held that the governmental authority of a city can, with immunity, commit a plain violation and invasion of the rights of the citizen by taking or damaging his land for street or other public purposes.

And we do not think that the above findings can be disturbed here on the ground of the insufficiency of the evidence to support them. Respondents introduced as their witnesses the superintendent of streets, Howard, and his deputy, Hutton; and appellants rely mainly upon matters brought out on the cross-examination of these witnesses. Their contention is, that the excavation was made by the superintendent entirely on his own motion, and without any direction, co-operation, or knowledge of the city council. On the cross-examination of Hutton, under whose immediate supervision the work was done, his main testimony on this point was as follows: "Mr. Howard instructed me to go there and see whether," etc.; and, further: "I did n't have any other instructions. I did n't have any instructions from the city council or from any other officials." But on Howard's examination he was very doubtful as to what the city council did in the matter. He said: "*I don't think* that I referred the matter to the city council in any way. *I don't remember* receiving any instructions of any kind from the city council; if I did, it would be a matter of record, as I keep all of their instructions on file; I have no recollection of the matter. . . . *I have no recollection* in regard to a report being made to the board of public works for the building of the stairway and stated to the council that it would require an additional excavation to be made in that street." He was asked by his counsel if he had made any special report of the excavation to the city council after it was done, and he answered, "*I think not.*"

But it appears from the records of the city council, introduced by respondents, that on March 28, 1895, the board of

public works made a report to the city council, in which they
"recommend that the steps be placed at Broadway and Sand
Street leading from the grade from Broadway to the top of
the embankment, for the purpose of making the street passable
for pedestrians at that point, and that the superintendent of
buildings present specifications with an estimate of cost
thereof, which report was adopted." It appears further from
these records that on April 22, 1895, "the superintendent of
buildings reported on that day: I have the honor to present
specifications and estimate of cost of constructing steps on
Broadway and Sand Street. The steps are to be eight feet
wide, made with easy grade and a landing for every fifteen
steps, with suitable railings and supports. And building these
steps *will require additional excavation,* which will probably
be done to the best advantage by the *superintendent of streets.*
The construction and completion of the steps, after necessary
excavations have been made, will cost $290. Which report
was referred to the board of public works." These records
also show, under date of May 20, 1895, the following: "The
board of public works of that date, in the matter of the con-
struction of stairs at the intersection of Sand Street and
Broadway, recommended that the street superintendent be
authorized to contract with George F. Brown to construct the
same at a cost not to exceed seventy-five dollars; stairs to be
four feet wide in the clear. Which report was adopted by the
following vote." The excavation complained of was made in
May, 1895, commencing in the early part of that month. Now,
the records above quoted refer to the general subject of the
excavation and stairway; they commence on March 28th—a
few weeks before the excavation was begun; on April 22d, a
little more than a week before the commencement of the work,
they refer to the necessity of "additional excavation which
will probably be done to the best advantage by the superin-
tendent of streets"; and they close on May 20th, just about
the time the excavation was completed so as to admit of the
construction of the stairway,—at which time a contract for
the stairway was ordered. It is within the range of possi-
bility that all these things shown by the records were merely
remarkable coincidences occurring without any knowledge of
or reference to the other contemporaneous facts, and entirely
unconnected, in contemplation and intent, with the other mere

coincidence,—the excavation; but we cannot hold here that the court below should have so treated them. Considering the evidence above noticed, as well as other general features of the case, we are unable to say that, as a matter of law, the evidence was too slight or too free from conflict to warrant the findings of the court.

There were a few objections to rulings on the admissibility of evidence; but they were of little importance, and it is sufficient to say that we see no error in the rulings excepted to.

The respondents were entitled to judgment against both appellants; both were guilty of the unlawful act, and neither presented any valid defense.

The judgment and order appealed from are affirmed.

Henshaw, J., and Temple, J., concurred.